IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARY CLARK NABOZNY,

                Plaintiff,

v.

OPTIO SOLUTIONS, LLC d.b.a. QUALIA
COLLECTION SERVCES,

                Defendant.

OPINION and ORDER

21-cv-297-jdp

---

    This is a proposed class action in which plaintiff Mary Clark Nabozny alleges that defendant Optio Solutions LLC, a debt collection agency, violated the Fair Debt Collection Practices Act (FDCPA) when it shared information about Nabozny's debt with a company that processes and mails debt collection letters. Optio moves to dismiss, contending that Nabozny does not have standing because she has not suffered an injury in fact. Dkt. 7.[1] For the following reasons, the court will grant the motion.

BACKGROUND

    In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Nabozny alleges that Optio shared information about her debt with RevSpring, a company that processes and mails debt collection letters. Dkt. 1. The information included the

---

[1] Nabozny asks to submit a sur-reply to address the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Dkt. 15. Optio cited *TransUnion* in its reply brief. Dkt. 14. The court accepts Nabozny's proposed sur-reply. Dkt. 15-1.

existence of the debt, the amount owed, the alleged creditor, and Nabozny's name and address. *Id*. at ¶ 63. Optio could have prepared the letter and sent it without running afoul of the FDCPA. But Nabozny contends that in sharing this information with RevSpring, Optio violated 15 U.S.C. § 1692c(b), which prohibits debt collectors from communication with most third parties. That provision provides in relevant part:

> [W]ithout the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

RevSpring, as a provider of clerical services, is not among the expressly permitted third parties.

ANALYSIS

Optio contends that Nabozny does not have standing to bring this suit. Standing doctrine requires Nabozny to show that she suffered an injury in fact that is both fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Optio contends that Nabozny has not demonstrated an injury in fact, which the Supreme Court has defined as "an invasion of a legally protected interest" that is "concrete and particularized." *Id*. at 560 (internal quotation marks omitted).

Nabozny does not allege that sharing her information caused her to suffer any tangible harm. A "bare procedural violation" of a statute like the FDPCA does not qualify as a concrete injury, even if it gives rise to a statutory cause of action. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016). But "[i]ntangible harms can nevertheless be concrete." *Id*. at 340. Nabozny contends that she suffered a concrete harm because sharing information about her debt with

2

RevSpring violated her right to privacy, a concrete interest that the FDCPA was designed to protect.

To determine whether an intangible harm constitutes an injury in fact, the court must look both to historical conceptions of actionable harms and to the judgment of Congress. *Spokeo*, 578 U.S. at 340. The historical inquiry asks "whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 340). As for the judgment of Congress, the court must afford due respect to Congress's decision to impose a statutory provision on a defendant and grant a plaintiff a cause of action. *Id*. But a statutory violation causes an injury in fact only if the violation "harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (internal citations omitted).

### A. Historical conceptions of actionable harm

An intangible injury would be concrete if the alleged harm is closely related to one traditionally recognized as providing a basis for a lawsuit. *TransUnion*, 141 S. Ct. at 2204. The alleged harm does not need to be identical to that required by a common-law tort. *Id*. at 2209. But it must be the same *kind* of harm, though not necessarily to the same degree, that could support an action at common law. *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462 (7th Cir. 2020).

Nabozny contends that her alleged harm bears a close relationship to common-law torts for invasion of privacy. It is well-established that "[v]iolations of rights of privacy are actionable." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017). But the

Seventh Circuit recently clarified that analogy to a broad category of tort, such as "invasion of privacy," is not enough to show that an alleged harm has a close relationship to an action at common law. *See Persinger v. Sw. Credit Sys., L.P.,* 20 F.4th 1184, 1191–92 (7th Cir. 2021). Instead, the alleged harm must have a close relationship to a specific "theor[y] of wrongdoing." *Id*. at 1192.

Traditionally, the category of invasion of privacy encompassed four such theories: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light. *Id.* (citing Restatement (Second) of Torts §§ 652A–652E (1977)). Nabozny does not identify which specific tort most closely resembles her alleged harm. But the court agrees with Optio that the best comparator is publicity given to private life, which occurs when a person gives "publicity" to private facts that would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652D (1997). Publicity goes beyond sharing with one person; the communication must be "to the public at large," or to enough people that the information is certain to become public knowledge. *Id*.

Nabozny's alleged injury does not have a close relationship to the tort because disclosure to a third party provider of clerical services is not tantamount to disclosure to the public. The harm of the tort is not the mere fact of disclosure. Instead, it is that private facts will become widely known, or at least known by people with a close relationship to the plaintiff. *See, e.g. Pachowitz v. Ledoux*, 2003 WI App 120, ¶ 21, 265 Wis. 2d 631, 645, 666 N.W.2d 88, 95. Optio's disclosure to RevSpring would not result in that harm. Nabozny does not have a relationship with RevSpring such that its knowledge of her debt causes Nabozny any amount of embarrassment. Nor is disclosure to a third party vendor the sort of disclosure that is

4

certain—or even likely—to reach the public or anyone outside of RevSpring. Indeed, sharing information with a subcontractor is not meaningfully different than sharing the information among Optio's own employees in the course of their work.

Nabozny's alleged harm is thus distinguishable from the out-of-circuit cases she cites. In *Morales v. Healthcare Revenue Recovery Grp., LLC*, a barcode that could be used to identify the plaintiff as a debtor was printed on the outside of an envelope. 859 F. App'x 625, 627 (3d Cir. 2021). And in *Douglass v. Convergent Outsourcing*, the plaintiff's account information was visible through a glassine window on the envelope. 765 F.3d 299, 303 (3d Cir. 2014). Those disclosures bore the risk of exposure to the public, because the sensitive information was visible to anyone who happened to see the envelope. But disclosure to only a subcontractor is much more limited.

This reasoning finds support in a suggestive footnote in *TransUnion*. The main issue in that case involved errors in credit reports that the defendant credit reporting agency had not disclosed to third parties. Plaintiffs made a new argument to the Supreme Court that the errors were disclosed internally, to credit reporting agency employees and third-party vendors. And, plaintiffs contended, such a disclosure of false information would cause harm analogous to the traditional tort of defamation. The Court rejected the argument, not only as untimely and thus forfeited, but also as "unavailing." 141 S. Ct. at 2210 n.6. The Court reasoned that intra-company disclosures and disclosures to printing vendors were not necessarily recognized as publication for purposes of a defamation claim. *Id.* Both parties here contend that the footnote is dicta, and the Court was discussing the tort of defamation, not publicity given to private life. But the extent of publication required to support a claim for publicity given to private life is greater than that required for a defamation claim, which traditionally requires only disclosure

5

to a person other than the person defamed. *See, e.g., Torgerson v. J./Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997). Even dicta provide insight into how the Supreme Court is likely to rule on an issue. *See United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998). So Supreme Court skepticism that a disclosure of false information to a printing vendor would constitute the requisite "publication" to support a defamation claim is highly informative here.

Lower courts are divided on whether disclosure to a third party provider of clerical services has a close relationship to a common law tort. *Compare Quaglia v. NS193, LLC*, Case No. 21-CV-3252 (N.D. Ill. October 12, 2021) (granting motion to dismiss for lack of standing), with *Thomas v. Unifin, Inc.,* No. 21-CV-3037, 2021 WL 3709184, at *2 (N.D. Ill. Aug. 20, 2021) (determining that the standing requirement was satisfied). Nabozny encourages this court to follow the Eleventh Circuit's decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, which is the only appellate case to address whether disclosure to a provider of clerical services produces a concrete injury. 17 F.4th 1016 (11th Cir.), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021). In *Hunstein*, the Eleventh Circuit held that disclosing information to the employees of a letter-printing company presented the same kind of harm as disclosure to the public. *Id.* at 1028. But *Hunstein's* persuasive value is limited, because the opinion has been vacated pending rehearing en banc.[2] 17 F.4th 1103. Accordingly, the district court decisions grounded on *Hunstein* are, at this point, also of limited persuasive value.

---

[2] The Eleventh Circuit originally decided *Hunstein* in April 2021. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc*., 994 F.3d 1341, 1347 (11th Cir.). The Eleventh Circuit held that plaintiff had standing, but the decision was vacated for rehearing following the *TransUnion* decision. After rehearing, the Eleventh Circuit concluded that *TransUnion* did not disturb their prior reasoning and again held that the plaintiff had standing. 17 F.4th 1016 (11th Cir. 2021). References in the text are to the second opinion, which has been vacated pending a rehearing en banc. 17 F.4th 1103 (11th Cir. 2021).

*See Thomas*, No. 21-CV-3037, 2021 WL 3709184, at *2 (following *Hunstein*); *Keller v. Northstar Location Servs.*, No. 21-CV-3389, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021) (same).

In this court's view, the decisions that reach the opposite result are better reasoned. This court agrees with the courts that have concluded that disclosure to a third party provider of clerical services differs from disclosure to the public in kind, not merely in degree. *See, e.g.*, *Shields v. Prof'l Bureau of Collections of Md., Inc.*, No. 2:20-cv-02205-HLT-GEB, 2021 WL 4806383, at *8 (D. Kan. Oct. 14, 2021); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *10 (S.D.N.Y. Dec. 5, 2021). A debt collector that outsources the mechanical tasks of preparing and mailing letters that the debt collector itself is authorized to send does not inflict any concrete injury on the debtor.

**B. Judgment of Congress**

Courts must respect Congress's decision to create a statutory obligation and a corresponding cause of action, because Congress is well-positioned to identify intangible harms that are nevertheless concrete. *Spokeo,* 578 U.S. at 341. But courts must still independently decide whether a plaintiff alleges an injury in fact as opposed to a mere injury in law. *TransUnion*, 141. S. Ct. at 2205. As for the FDCPA, a violation causes an injury in fact only if the violation "harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (internal citations omitted).

The harm that Nabozny alleges does not harm an interest the FDCPA sought to protect. The FDCPA was passed "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95–382, at 1 (1977). To be sure, the FDCPA was concerned with "invasions of

individual privacy," as a general matter. *See* 15 U.S.C. § 1692(a). But the concrete interest protected by a statute is defined with an eye toward the actual harms Congress sought to prevent. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017). And here, Congress identified the third-party disclosures that rose to the level of "[c]ollection abuse": "disclosing a consumer's personal affairs to friends, neighbors, or an employer." S. Rep. No. 95–382, at 2. (1977). Those kinds of contacts are "not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." *Id*. at 4. The record shows that Congress was concerned with disclosures to people who knew the debtor, not limited disclosures to third-party providers of clerical services.

The inaction of the Consumer Financial Protection Bureau, the agency tasked with promulgating regulations to implement the FDCPA, is further evidence that Congress did not seek to prevent the use of outside vendors to send collection letters. The CFPB is aware that most debt collection agencies use third-party vendors to send written communications. *See* Bureau of Consumer Fin. Prot., *Study of third-party debt collection operations* (July 2016), at 32.[3] But the CFPB did not address the practice in the newest regulations implementing the FDCPA, despite creating several other rules related to permissible communications. *See* 85 Fed. Reg. 76,735 (Nov. 30, 2020). The CFPB's judgment is not a direct expression of the judgment of Congress. But an agency tasked with implementing a statute is presumed to have unique insight into how to fulfill the statute's purposes. *See NLRB v Hearst Publications*, 322 US 111, 130-131 (1944). And here, the CFPB's inaction suggests that disclosure to a third-party provider of clerical services does not harm an interest the FDCPA was designed to protect.

---

[3]*Available at* https://www.consumerfinance.gov/documents/755/20160727_cfpb_Third_Party_ Debt_Collection_Operations_Study.pdf (last visited January 24, 2022).

8

CONCLUSION

Nabozny has suffered no concrete injury. Sharing information with a third-party provider of clerical services is not analogous to disclosure to the world at large. And disclosure to such vendors is not the sort of harm the FDCPA was meant to prevent. Both history and the judgment of Congress suggest that Nabozny does not have standing to bring this suit.

ORDER

IT IS ORDERED that:

1. Plaintiff Mary Clark Nabozny's motion for leave to file a sur-reply, Dkt. 15, is GRANTED.

2. Defendant Optio Solutions, LLC's motion to dismiss, Dkt 7, is GRANTED. The case is DISMISSED without prejudice for lack of subject matter jurisdiction.

3. The clerk of court is directed to enter judgment and close this case.

Entered February 1, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge